IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT STEVEN HUDSON,

　　　　　　　　Petitioner,

　　v.

BEN CURRY, Warden

　　　　　　　　Respondent.

No. C 06-03716

**ORDER DENYING HABEAS PETITION**

**BACKGROUND**

　　　　Petitioner, Robert S. Hudson, was convicted of first degree murder pursuant to a guilty plea in Los Angeles County Superior Court. On July 10, 1984, he was sentenced to 25 years to life in prison. In this action, petitioner challenges the execution of his sentence. Petitioner asserts that his federal due process rights were violated when the Board of Prison Terms ("BPT") found him unsuitable for parole on August 18, 2004.

**I.　　The commitment offense**

　　　　Reports from parole suitability determinations (June 24, 1998, November 5, 2001, May, 21, 2003, and August 18, 2004) and a probation officer's report dated July 10, 1984, describe the crime as follows. Petitioner and the victim, Duane Keith Rice, had been dealing drugs for approximately six years. Business dealings between petitioner and Rice had gone bad, and petitioner developed animosity towards Rice. Both petitioner's wife and his friend, Patrick Dickey, convinced petitioner to rob Rice for money. Rice was known to typically carry large sums of money on his person for his narcotics business, and petitioner believed that he would be able to obtain approximately $50,000 from Rice. For over a month, petitioner and Dickey devised a plan to assault and rob Rice. Petitioner maintains that the original plan was not to murder Rice, but to assault and rob him. Although petitioner admits to

United States District Court
For the Northern District of California

1   previous alcohol abuse problems, he maintains that he was not drinking on the day of the murder.

2          On February 28, 1983, petitioner and Dickey carried out the plan. In the course of the robbery,

3   Rice attempted to defend himself. A struggle ensued and petitioner and Dickey repeatedly struck Rice

4   with a metal pipe, splitting Rice's head open and killing him. Dickey suggested that he and petitioner

5   clean-up the mess and dump the body in Lake Mead, Nevada. Petitioner and Dickey wrapped Rice's

6   body in plastic and loaded the body into Rice's van. After thoroughly cleaning the crime scene,

7   petitioner and Dickey began driving to Las Vegas. On the way, they stopped at an all-night sporting

8   goods store and bought a rubber raft and lead weights. Petitioner and Dickey weighted Rice's body

9   down with the lead weights, rowed out into the middle of Lake Mead, and tossed the body into the

10  water. Petitioner and Dickey then drove Rice's van to Tijuana, Mexico and cleaned and abandoned the

11  van. Rice's body has never been recovered.

12         On January 24, 1984, petitioner's spouse contacted Detective Douglas McCormack of the

13  Pomona Police Department and voluntarily stated that she believed petitioner and Dickey were involved

14  in the murder of Rice. McCormack also interviewed William Howard Robertson on February 23, 1984.

15  Robertson stated that in late 1983, petitioner had mentioned that a pipe had been used to kill Rice, and

16  detailed other aspects of the crime, including dumping the body in Lake Mead and abandoning the

17  victim's car in Mexico.

18         Petitioner entered a guilty plea for first degree murder on July 10, 1984, and was sentenced to

19  25 years to life. Petitioner's minium eligible parole date was July 17, 1999**.**

20

21  **II.     Parole proceedings**

22         Petitioner has presently served 23 years of his 25 years to life sentence and has had five parole

23  suitability hearings, beginning on June 24, 1998. This petition addresses the fourth parole suitability

24  hearing held on August 18, 2004, when petitioner had served about 20 years of his sentence; at that

25  hearing, petitioner was denied parole for one year. Petitioner was subsequently denied parole for two

26  additional years at a hearing on December 15, 2005.

27         At the parole hearing in question, petitioner and his attorney were both present and given an

28  opportunity to speak. The BPT panel enumerated the facts of the crime, to which petitioner stipulated.

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   The panel considered petitioner's past criminal history, which consisted of minor drug-related charges,

2   one conviction for misdemeanor marijuana possession, and no violent crimes.  The panel also reviewed

3   petitioner's prison record and found no serious disciplinary actions.[1]  In addition, the record showed an

4   exceptional number of laudatory reports describing petitioner's participation in self-help programs,

5   volunteer programs, and educational and vocational training.  Petitioner also presented a letter

6   containing a job offer upon his parole, and statements of family support for his release.  The

7   psychological report determined petitioner's potential for violence once released was no higher than that

8   of the average citizen and was supportive of release.

9          The panel concluded that petitioner was "not suitable for parole and would pose an unreasonable

10  risk of danger to society or a threat to public safety if released from prison."  Pet'r Ex. J at 45.  The

11  primary reasoning was the timing and gravity of the offense.  The BPT stated:

12          The offense was carried out in a dispassionate and calculated manner
            such as an execution-style murder.  The victim was abused and
13          mutilated during the offense.  The offense was carried out in a
            manner that demonstrated a total disregard for another human being.
14

15  *Id.*  Though the panel found little escalating pattern of criminal conduct and no other violent offenses,

16  the panel still expressed concerns about petitioner's criminal history and his prior problems with

17  substance abuse.

18          We do know that you failed to profit from society's previous attempts
            to correct your criminality through a drug-diversion program.  An
19          unstable social history, certainly the substance abuse that the prisoner
            was involved in prior to incarceration was an unstable, undesirable
20          trait.

21  *Id.* at 46.  The panel commended petitioner on his behavior in prison and his educational and self-help

22  achievements, and recognized that the psychological evaluation showed his level of dangerousness was

23  that of an average citizen in the community.  However, the panel found that "those positive aspects of

24  [petitioner's] behavior don't outweigh the factors of unsuitability" and recommended that petitioner

25  "remain disciplinary free" and "continue to participate in self-help programs."  *Id.* at 48.  The panel

26  expressed:  "One day I'm certain that you will receive a parole date."  *Id.*

27

28          [1]  The record showed only one violation for misappropriation of state food under CDC Form
            128-A in 1986, a misdemeanor.  *See* Cal.Code Regs., tit. 15, § 3312(a)(2) (2008).

**III.    State habeas proceedings**

After the BPT's fourth denial of parole, petitioner sought a writ of habeas corpus in state court. The Los Angeles County Superior Court denied the petition for writ of habeas corpus because "the record contains 'some evidence' to support the Board's finding that petitioner is unsuitable for parole." Pet'r Ex. T.  The California Court of Appeals and the California Supreme Court denied petitioner's habeas petition without comment.  Pet'r Exs. U, V.

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus if the

> adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is contrary to clearly established law if it applies a rule that contradicts the law as set forth by the Supreme Court, or arrives at a different result in a case that is "materially indistinguishable" from a Supreme Court decision. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Unreasonable application of established law occurs when the court "correctly identifies the governing legal rule but applies it unreasonably to the facts." *Id.*  Under the AEDPA, although Supreme Court precedent is the only controlling authority, Ninth Circuit case law is persuasive authority for the purposes of review of previous state court decisions. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

In reviewing a habeas corpus petition, a federal court must look at the last reasoned decision of the state court to determine whether that court's decision was contrary to or an unreasonable application of established federal law.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).  In the alternative, a federal court can grant a habeas petition if the state court's adjudication of the petitioner's claims was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(2).

4

**DISCUSSION**

Petitioner argues that he has a liberty interest in parole under the Fifth and Fourteenth Amendments and therefore has a right to due process in parole suitability proceedings. Petitioner contends that the BPT's continued reliance on the immutable circumstances of petitioner's commitment offense in denying parole violates due process. The Court will consider petitioner's argument herein.

**I.       Due process requires that some evidence support a parole denial**

The Fifth and Fourteenth Amendments prohibit government deprivation of an inmate's life, liberty, or property interest without due process of the law. U.S. Const. amends. V, XIV. The Supreme Court in *Greenholtz v. Inmates of Nebraska Penal,* 442 U.S. 1, 7 (1979), held that an inmate does not have a constitutional right to be released before the expiration of his or her sentence. However, if a state's parole system contains statutory language that creates a presumption of release on parole, then the "expectancy of release provided in this statute is entitled to some measure of constitutional protection." *Id.* at 12. The Supreme Court added that whether a state's parole statute creates a liberty interest must be determined on a case by case basis. *Id.* at 12 (finding that the Nebraska parole statute did give rise to a liberty interest); *see Bd. of Pardons v. Allen*, 482 U.S. 369, 381(1987) (Montana parole statute had similar mandatory language contained in the Nebraska parole statute and therefore established a liberty interest in parole). The Ninth Circuit has established that the California parole scheme as established in California Penal Code §3041(b) "uses mandatory language and is largely parallel to the schemes found in *Greenholtz* and *Allen.*" *McQuillion v. Duncan,* 306 F.3d 895, 901 (9th Cir. 2002). Therefore, California law provides a liberty interest in a parole date and an inmate has a vested right to due process in parole suitability proceedings. *See Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006) (citing *Allen*, 482 U.S. at 377-78; *Greenholtz*, 442 U.S. at 12; Cal. Penal Code § 3041(b)).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). "To determine whether the some

United States District Court
For the Northern District of California

1   evidence standard is met 'does not require examination of the entire record, independent assessment of

2   the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there

3   is any evidence in the record that could support the conclusion reached'" by the BPT. *Id.* at 1128

4   (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the

5   record is not so devoid of evidence that the findings of the . . . board were without support or otherwise

6   arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457). The "some evidence" standard of *Hill* is clearly

7   established law in the parole context for purposes of § 2254(d). *Id.*

8       Having determined that there is a due process right, and that "some evidence" is the evidentiary

9   standard for judicial review, the Court next looks to state law, which sets the criteria to which the "some

10  evidence" standard applies. *See Hayward v. Marshall*, 512 F.3d 536, 542 (9th Cir. 2008). After this,

11  the Court will evaluate whether the evidence used to support the BPT's finding of unsuitability comports

12  with California's "some evidence" rule and whether the state court's decision upholding this finding is

13  not otherwise arbitrary.

14

15

16  **II.     California's some evidence standard for parole suitability decisions**

17      Under California law, a prisoner serving an indeterminate life sentence becomes "eligible for

18  a parole date after serving minimum terms of confinement required by statute." *Hayward*, 512 F.3d at

19  542; *see also* Cal. Penal Code § 3041(a). Once the prisoner has completed his minimum term, the BPT

20  shall set a release date unless the prisoner is found unsuitable for parole. According to the parole

21  consideration criterion set out in the regulations, "a life prisoner shall be found unsuitable for and denied

22  parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society

23  if released from prison." 15 Cal. Code Regs. § 2402(a). Section 2402(c) sets forth circumstances

24  tending to demonstrate unsuitability for parole. The factors to be considered include, *inter alia,* the

25  prisoner's commitment offense, previous record of violence, unstable social history, and psychological

26  factors. *Id*. § 2402(c)(1)-(5). California courts have found that in order for such factors to be used as

27  "some evidence" in support of a parole suitability decision, a parole board cannot merely indicate that

28  a particular factor exists but must instead show that the parolee's release will unreasonably endanger

**United States District Court**
For the Northern District of California

1  public safety. *In re Dannenberg,* 156 Cal. App. 4th 1387, 1398 (Cal. Ct. App. 2007); *In re Lee,* 143 Cal.

2  App. 4th 1400, 1408 (Cal. Ct. App. 2006); *see also Hayward,* 512 F.3d at 542.   Furthermore, "[s]ome

3  evidence of the existence of a particular factor does not necessarily equate to some evidence the

4  parolee's release unreasonably endangers public safety." *Lee,* 143 Cal. App. 4th at 1408.  It is clear from

5  these cases that the Court's task is to determine whether some evidence supports the reasons cited for

6  parole, and also whether some evidence supports the BPT's decision that the prisoner continues to pose

7  a threat to public safety. *Dannenberg,* 156 Cal. App. 4th at 1400.

8

9  ### III.    Whether some evidence supports the BPT's decision

10

11        In denying petitioner's eligibility for parole, the BPT identified the circumstances of the murder,

12  petitioner's failure to profit from society's previous attempts to correct his criminality through a drug-

13  diversion program, unstable social history, and the Los Angeles District Attorney's opposition to parole.

14  Pet'r Ex. J at 45-46.  The Los Angeles Superior Court upheld the BPT's decision, holding that there was

15  some evidence in the record to support the BPT's finding that petitioner was not suitable for parole. *See*

16  Pet'r Ex. T at 1.  Namely, the court found that the circumstances surrounding petitioner's commitment

17  offense as well as petitioner's prior unstable social history are sufficient to uphold a decision that

18  petitioner presents an unreasonable danger to public safety.  Because the state court's decision is the last

19  reasoned decision, this Court is limited to reviewing only the circumstances relied upon by the Los

20  Angeles Superior Court, pursuant to the AEDPA.  *See Nunnemaker*, 501 U.S. at 803-04; *Barker v.*

21  *Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  As per *Hayward* and *Dannenberg*, there must be

22  some evidence to support the court's findings of unsuitability – that petitioner's commitment offense

23  was carried out in an especially heinous, atrocious or cruel manner and petitioner has an unstable social

24  history – and that these findings support the court's conclusion that petitioner poses an unreasonable

25  risk to public safety if released. *See Hayward*, 512 F.3d at 542; *see also Dannenberg,* 156 Cal. App. 4th

26  at 1400.  Because the Court finds that the petitioner's commitment offense constitutes "some evidence,"

27  the Court  need not reach the question whether petitioner's record contains some evidence of an unstable

28  social history.

**United States District Court**
For the Northern District of California

7

**United States District Court**
For the Northern District of California

1      The superior court heavily relied upon circumstances surrounding the commitment offense in

2  determining that petitioner's good behavior, coupled with his favorable psychological evaluation, were

3  not enough to outweigh findings of parole unsuitability.  Pet'r Ex. T at 2-3.  Parole suitability can

4  depend on circumstances surrounding the commitment offense and whether it was conducted in an

5  "especially heinous, atrocious or cruel manner."  15 Cal. Code Regs. § 2402(c)(1).[2]  The California

6  Supreme Court has held that facts of the crime can alone support a sentence longer than the statutory

7  minimum even if everything else about the prisoner is laudable.  "While the Board must point to factors

8  beyond the minimum elements of the crime for which the inmate was committed, it need engage in no

9  further comparative analysis before concluding that the particular facts of the offense make it unsafe,

10 at that time, to fix a date for the prisoner's release."  *In re Dannenberg*, 34 Cal. 4th 1060, 1071 (Cal.

11 2005); *see also In re Rosenkrantz*, 29 Cal. 4th 616, 682-83 (Cal. 2002) ("[t]he nature of the prisoner's

12 offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where

13 no circumstances of the offense reasonably could be considered more aggravated or violent than the

14 minimum necessary to sustain a conviction for that offense").  However, the recent *Dannenberg*

15 decision ("*Dannenberg II*")  found that although there may be some evidence supporting a finding that

16 the crime was especially heinous, the finding does not necessarily support the *conclusion* that the

17 prisoner poses an unreasonable risk to society if released. *Dannenberg II,* 156 Cal. App. 4th at 1400.

18 Relying on the formula espoused in *Dannenberg II*, the Court will consider whether some evidence

19 supports a finding that petitioner's commitment offense was especially heinous and then consider

20 whether some evidence supports a finding that petitioner poses an unreasonable risk of danger to society

21 if released.

22

23

24      **A.      Some evidence supports BPT's finding that petitioner's commitment offense was
                especially heinous.**

25

26      [2] Factors to be considered include whether: "(A) [m]ultiple victims were attacked, injured or
   killed in the same or separate incidents, (B) [t]he offense was carried out in a dispassionate and
27 calculated manner, such as an execution-style murder, (C) [t]he victim was abused, defiled or mutilated
   during or after the offense, (D) [t]he offense was carried out in a manner which demonstrates an
28 exceptionally callous disregard for human suffering, (E) [t]he motive for the crime is inexplicable or
   very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1).

**United States District Court**
For the Northern District of California

1    The state court upheld the BPT's finding that petitioner was not suitable for parole primarily on

2   the gravity of the commitment offense. Specifically, the court found that "there is 'some evidence' the

3   crime was carried out in a dispassionate and calculated manner and that the victim was abused during

4   the commission of the offense." *See* Pet'r Ex. T at 2. The murder of the victim was due to several

5   beatings by both petitioner and his partner with a pipe, demonstrating an offense carried out in a

6   dispassionate manner and with callous disregard for human suffering. Although there was an

7   opportunity to stop the beating after petitioner hit the victim with the pipe once, he neither stopped

8   himself, stopped his partner from beating the victim, nor called for help. Both men continued to beat

9   the victim until his head was smashed open and he died. The murder was also committed during

10  commission of a robbery. After the killing, petitioner and his partner went to great lengths to hide the

11  body and avoid detection by police. The house was cleaned, the body was driven to Nevada in the

12  victim's car, weighted down with weights purchased at an all-night sporting goods store, rowed out in

13  a rubber raft, and dumped into Lake Mead. Petitioner then drove to and abandoned the victim's car in

14  Mexico. Petitioner hid the crime from authorities while the victim's family anguished over his

15  disappearance. Had petitioner not told his spouse of the crime, and had she not seen fit to notify the

16  police, it is likely that the disappearance of the victim would have continued to remain unsolved.

17    Petitioner's activities on the day of the offense were beyond the minimum elements necessary

18  to constitute first degree murder and thus support a finding that the commitment offense was done in

19  an especially heinous, atrocious or cruel manner. However, it remains to be seen if there is some

20  evidence that after 23 years in prison, petitioner currently poses an unreasonable threat to society if

21  released on parole.

22

23

24  **B.      Denial of parole based on circumstances surrounding commitment offense does not violate due process at this time**

25

26    Petitioner argues that the BPT's reliance on the unchanging facts of the crime to deny him

27  parole violates due process. Petitioner relies on the Ninth Circuit decision in *Biggs v. Terhune*, 334 F.3d

28  910 (9th Cir. 2003), that suggests that continued reliance solely on the unchanging facts of the crime

and conduct prior to imprisonment to deny parole, even if supported by "some evidence," could result

**United States District Court**
For the Northern District of California

1  in a due process violation. *Id.* at 916-17. In *Biggs*, the Ninth Circuit upheld the denial of a parole

2  release date based solely on the nature of the crime and the prisoner's conduct before incarceration. *Id.*

3  at 916. However, the *Biggs* court cautioned that "[o]ver time . . . , should Biggs continue to demonstrate

4  exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the

5  nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest

6  in parole." *Id.*

7  Similarly, the Ninth Circuit in *Sass* upheld the BPT's third denial of parole based on the

8  unchanging facts of the crime and previous criminal history. *Sass,* 461 F.3d at 1129. Though the

9  language in *Biggs* suggests that reliance on an unchanging factor could result in a due process violation,

10  the *Sass* court noted that: "[u]nder AEDPA it is not our function to speculate about how future parole

11  hearings could proceed." *Id.* This was reaffirmed in *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007),

12  where the Ninth Circuit upheld the petitioner's fifth denial of parole despite the BPT's reliance on the

13  unchanging facts of the crime. The court stated: "Because the murder Sass committed was less callous

14  and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of

15  exemplary conduct in prison and evidence of rehabilitation, our decision in *Sass* precludes us from

16  accepting Iron's due process argument." *Id.* at 853. *Irons* emphasized the fact that in all three cases

17  (*Irons, Sass,* and *Biggs*) in which the court had approved "a parole board's decision to deem a prisoner

18  unsuitable for parole solely on the basis of his commitment offense . . . the decision was made before

19  the inmate had served the minimum number of years required by his sentence." *Id.* at 854. The court

20  in *Irons* held that due process was not violated when the prisoner was deemed unsuitable for parole

21  based on their commitment offense "prior to the expiration of their minimum terms." *Id.*

22  The common holding of these three cases is that the BPT can look at immutable events, such as

23  the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not

24  currently suitable for parole even after the initial denial. *Sass,* 461 F.3d 1123; *Biggs*, 334 F.3d at 917;

25  *Irons,* 505 F.3d at 854. However, as per *Biggs*, the weight to be attributed to those immutable events

26  should decrease over time as a predictor of future dangerousness as the years pass and the prisoner

27  demonstrates favorable behavior. *See Biggs*, 334 F.3d 910. Not only does the passage of time in prison

28  count for something, exemplary behavior and rehabilitation in prison should also be considered. *See*

10

**United States District Court**
For the Northern District of California

1  *id.* at 916.  The "some evidence" standard might be quite low, but it does require that the decision not

2  be arbitrary, and reliance on only the facts of the crime might eventually make for an arbitrary decision.

3  *See id.; Hill,* 472 U.S. at 457.

4  In light of *Dannenberg II,* the Ninth Circuit has revisited the issue of predicting a petitioner's

5  danger to society based solely on the circumstances of his or her crime.  The California Court of

6  Appeals in *Dannenberg II* held that the petitioner's spotless prison record for the last twenty years along

7  with the absence of any negative factors "combine to eliminate any modicum of predictive value that

8  [the petitioner's] commitment offense once had." *Dannenberg II,* 156 Cal.App.4th at 1400. *Dannenberg*

9  *II* found that the Governor's reversal of parole violated due process because there was *no longer* any

10  evidence that due to the petitioner's commitment offense, he *currently* posed an unreasonable risk of

11  danger to society.  *Id.* at 1401.  In the Ninth Circuit case of *Hayward*, the petitioner had been

12  incarcerated for twenty-seven years on a sentence of fifteen years to life and was found suitable for

13  parole by the BPT, which was reversed by the Governor based on the gravity of Hayward's commitment

14  offense. *Hayward*, 512 F.3d at 546.  The court, in granting Hayward's habeas petition noted Hayward's

15  exemplary record of conduct during most of his incarceration and the Board's favorable decision on

16  parole suitability, and held that "Hayward's commitment offense had no predictive value regarding his

17  suitability for parole" and that "the Governor violated Hayward's due process rights by relying on that

18  stale and static factor in reversing his parole grant." *Id.* at 546-47.  The Ninth Circuit also noted that

19  Hayward had exceeded his minimum term of imprisonment, a turning point deemed important by the

20  court in *Irons.  Id.* at 547; *see Irons*, 505 F.3d at 853.

21  As between *Hayward*, on the one hand, and *Sass* and *Irons*, on the other, petitioner's situation

22  falls squarely within the latter cases.  Similar to the case at bar, *Sass* and *Irons* involved denials of parole

23  based largely on the unchanging facts of the crime.  Those cases also involved third and fifth parole

24  suitability determinations where the petitioners – like Hudson in this case –  had yet to complete the

25  minimum prescribed sentence.  Conversely, petitioner's case is distinguishable from *Hayward* in that

26  Hayward had more than served his minimum term of imprisonment set out in his sentence.  Petitioner's

27  case is more akin to the facts of *Sass* and *Irons* and is therefore subject to the same due process

28  determination.

11

1    For these reasons, the Court does not find that petitioner's due process rights were violated by

2  the denial of parole based on the circumstances of his commitment offense.

3

4                                              **CONCLUSION**

5

6    For the foregoing reasons, the petition for writ of habeas corpus is DENIED. [Docket No. 1].

7

8    **IT IS SO ORDERED.**

9

10  Dated:  April 15 , 2008                          _____

11                                              SUSAN ILLSTON
                                               United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

12